1-2-6-3-6-2 William Edmund Lindsey vs. Pinnacle National Bank at all. Part of this matter will see 15 minutes per side, 15 minutes for comment, 15 minutes to be shared by appellees. Mr. Patrick for comment. Before you all begin, let me ask the appellees, do you all intend to divide argument? And just so we'll know what's coming up. We're going to try to divide it, but Council decided and graciously said that if I go a little longer he's not going to be offended. So you all are responsible for your own division and we needn't worry about it, is that right? Yes. Okay, all right. And then this question, this comment addressed to both, to all council before you start. The panel members have had some discussion about whether there is a problem with jurisdiction in this case. This appeal was taken as an appeal of a final order. It was not certified as an interlocutory appeal. In the course of getting ready, it came to our attention that there's actually a split among the circuits as to whether an order that denies confirmation of a debtor's reorganization plan is an appealable final order. I'm guessing that because it's not discussed in your briefs that you all didn't think about this. If you did think about it, we'd appreciate your addressing it in your argument. And if not, while we're not, we're just alerting you that it's on our minds and while we're not requiring that anybody file anything additional, if anybody wants to address the jurisdictional issue, we'd appreciate your doing it with a brief of no more than five pages in about a week. I appreciate that from the court. I am not prepared to discuss it today because it wasn't one of the elements that we researched in preparation for today. Okay. Well, we do want to hear your argument on the merits, of course. Eager to hear that. It's an interesting case on the merits as well. Okay. If I may, Michael Fitzpatrick for the appellant, William Edwin Lindsay. I preserve three minutes for rebuttal. This case comes before the court on a very narrow issue culminating from Congress' expression of changes in the Bankruptcy Code in 2005 after many years of work to get to that point. The center point, the masterpiece of that legislation, involved consumer cases. There was a perceived gaming of the system by consumers and a failure of consumers to pay what they could reasonably pay to their creditors within the bankruptcy system between Chapter 7 and Chapter 13. And all of the legislative history that's available in respect to discussion of the statute and its changes is in the context of the consumer case. The often quoted statement that Judge Steyer used as well about the primary purpose of these changes was to have debtors in consumer cases pay more than they have traditionally been paying within the bankruptcy context. However, Congress went further. It made changes to Chapter 11. Almost all of those changes relate to the natural person within Chapter 11. We don't know from the history whether this was a unified set of changes or whether they originated from diverse locations, so we do not know whether there was an integration among the drafters or whether there was separate analysis of how they affected one another. The changes that primarily bring us here today are the creation of Section 1115 and then the amendment of 1129B2B2. They are interrelated to one another. The argument on behalf of the appellant is that the language chosen in the creation of Section 1115 and the similar language chosen in the amendment or alteration of the fair and equitable requirements on what we call cram down, mean without question that the absolute priority rule was abrogated by these changes. The absolute priority rule has never been absolute and it has never been in effect with complete continuity. It was a judicially created requirement after the Civil War during the railroad bankruptcies where shareholders were seen to be taking advantage of creditors in the reorganization process. Once we got to the 1935 Act, which is the core real codification of a unified bankruptcy system, you had the same requirement under old Chapter Roman 10 and old Roman 11 that reorganizations be fair and equitable. But what you did not have within the statute was a statement of the absolute priority rule. It continued to be a judicial creation of the specifics of how you get to fair and equitable. When you get down to the L.A. Lumber case, you have the expression of how you deal with the absolute priority rule if you wish to retain ownership as a stockholder. There's an exception, a corollary as the court is fond of calling it, to the absolute priority rule. In 1952, I believe, Congress reacted to the judicial requirement of the absolute priority rule in the Chapter Roman 11 cases, which would be the individual Chapter 11 and the closely held business Chapter 11 that specifically abrogated that judicial overlay of what is fair and equitable. When it made that change there, didn't it do it a little more directly and obviously than what seems really indirect is about the best you can say? Yes, it did it directly, and its legislative history was direct on why it was doing it. So what do we do with that reality when we're thinking about your argument today? This is a strange area of the law in respect to bankruptcy because when you come to 1978, and I'm going to come to your question a little bit around the track. In 1978, the absolute priority rule and its corollary were part of the lexicon of the law in respect to bankruptcy. And when Congress passed the code, it picked up the absolute priority rule but did not pick up the corollary. And so standard interpretation of statutory analysis would be that that's gone because it existed, Congress is charged to know it existed, and yet it came through. It's not expressly stated, but it came through. So there are instances where we get to a result without that unequivocal expression that nobody could contest. How do you deal with this Hamilton case where the Supreme Court said that they're not going to read the bankruptcy code to abrogate a past practice under the code absent some clear indication in the text that Congress meant to do that? I mean, what you're proposing is, I mean, let's start with this. You would agree what you're proposing is an abrogation of the absolute priority rule in individual Chapter 11 cases, correct? Unequivocally, that is the argument. Okay, and I appreciate that straight answer. So you have to grapple with Hamilton, don't you, and somehow show that what seems to be sort of a convoluted mechanism here is nonetheless a clear indication that the abrogation was intended? And if your point of view starts that it is convoluted, then the debtor has a burden it cannot meet. I'm not going to beat around the bush. Your position is, yes, there's a clear indication here and it's not as convoluted as your opponents would argue. That's the position. Okay. I thought when I was asking a question earlier, you seemed to be acknowledging it was indirectly done. No, what I meant by the history as we progressed through the rule is that Congress has never been very clear in respect to this area of this part of the law. It has had an ebb and flow that has not been within the discussion in the legislative history, either in the 78 major change to the law, absolute change in the law, and as we come forward with the Supreme Court in respect to this piece of the bankruptcy system. And I'm going to submit to the Court that the reason is that a natural person is different than an artificial entity. At the end of the day, an artificial entity can be destroyed. It can go out of existence. But we don't have that prerogative with a human being. So if you destroy the capacity of the individual, there's no separate resource of a shareholder to go on with life. But wasn't that same problem present before these amendments? And it wasn't some insuperable practical problem, right? They were, but the debtor had a resource that the creditor couldn't have unless they worked with the debtor, and that's the stream of income. The debtors who were achieving Chapter 11 success before these changes had income. Now, in the Farmer case of Ehlers, it was an unreliable income. But we're talking about highly compensated professionals, captains of industry, lawyers, accountants, doctors more often than not. And the creditors couldn't have that subsequent stream of income until the change in the code. And if they wanted the benefit of that, they should trade. That's because property of the estate under Section 541 is limited to pre-petition assets and not post. Is that right? Before 2005, the stream of income, unless it derived from the assets that existed on the day of the case, was not property of the case, wasn't for commercial or individual cases. Right. And so then they passed these amendments, and we have Section 1015, or 1115. Yes. And I understand your argument about includes, and normally that's sort of a broad term. But, I mean, if you read this provision, subsection A, it says property of the estate includes, in addition to property specified in Section 541, and then we have this one and two, all property, et cetera, earnings, et cetera. It seems like, just grammatically, the objects of the word includes in this section are those specified in one and two, and not those referred to in the clause, in addition to property, specified in Section 541. In which case, isn't the property that is included just one and two? And I disagree with your grammatical analysis. I think it is. I want to give you a chance here because I'm sort of a changer. It follows in respect to all of the objects, and that's the predicate to go to the second two objects. That includes is, I have this base that I am, that I have to deal with because if I don't deal with its existence, then the argument will be that prepetition assets are not property of the estate. And so I would submit that the includes is, I can't use it as a definition of itself, but that it encompasses the totality of the discussion, not just the two specific bullet points. How about if this clause A read, in addition to the property specified in Section 541, property of the estate includes one and two. Would I be right then to say that the only objects of the word includes here are one and two, and thus we ought to read this section to only be, quote, including them? I need a second to get my mind around it. Right, so. I think at that point it would create a certain ambiguity rather than a clarification of the interplay between 541 and 1115. I don't think it makes it better. I think it makes it less clear. Okay. So you'd acknowledge the one he just rephrased, that would be ambiguous, but the current language is unambiguous? That's my position, yes. And you agree you're in trouble if it's ambiguous? I'm not going to lie to the court. I have a burden if you have a substantial change in existing law to show what Congress intended. And Congress told nobody what they intended. So except for the language of the statute, no one knows. No, but I just want to make sure if we were in agreement with, this is kind of a response to Judge Ketledge's point, that if it's ambiguous, that's problematic for you because it's displacing a pretty solid feature of bankruptcy law. Absolutely. Okay, so we're on the same page there, okay. Yes. But the other thing I think you look at is what is the common usage of this word? And we have some help in respect to that, section 1 of 2 of the code, for instance, and it seems to be just glommed over. What do these words mean in the context of where they are used? Congress didn't use added. If it had used added, we wouldn't be here today. I don't think any of the courts would have had to put up with this issue in that situation. I've got a few seconds, but that's my argument. You'll have your rebuttal. All right, very good. I'm Tom Dickinson on behalf of Mountain National Bank and Pinnacle Bank, and I would advise the court at the outset that Mountain National Bank has been put in receivership. I don't know yet what party holds this claim, and as soon as I do know that, I'll file a motion to substitute the party, but I just want to advise the court of that at the outset. I think this case and the analysis of the statutes in question Just as I'm filing this, Pinnacle National Bank, there's no doubting its role here, right? Correct, except it has changed its name since the case started from Pinnacle National Bank to Pinnacle Bank. It's the same entity, they just changed their name. I just want to supplement one thing Judge Gibbons said at the beginning about this jurisdictional point. I think it's 158D1, which is the final judgments, decrees, orders, but then D2 has a certification provision, so no one's requiring anyone to file briefs, but keep in mind there is a certification option that if there were a jurisdictional problem today, could it be ameliorated tomorrow? I appreciate Your Honor's comment on that. Anyway, I think the issue before the court can be decided by just looking at the plain language of five different statutory provisions, and excuse me if I'm too elementary, but it helps me to walk through it and I think it will help you to walk through it. The starting point is Section 103A, that says that subpart Chapter 5 of Title 11 applies in Chapter 11 cases, and within Part 5 is 541, which is the definition of what is property of the estate. Section 541, of course, does not include post-petition earnings or post-petition acquired property. That's where Section 1115 enters, which was introduced in 2005 and only applies in individual debtor cases, and the definition of property of the estate was expanded to include two different subsections, which Your Honors have already been referring to. And the use of the word there is includes, and there is a statutory provision within the Bankruptcy Code as to rules of construction, and the word includes and including are not limiting phrases. So then you go to Section 1129, and Section 1129 carves out some language for individual debtors, and it uses the word included. Congress is deemed to know what the law is when they make a new law, and I think it's very telling in this case that they use the word included in Section 1129 and didn't use it elsewhere. And because of that, I believe that the word included is designed to refer to only those portions of property that were added by the new Code Section of 1115. And I think that this Court has previously reached a decision that's consistent with that analysis. In the Seafort case, in the initial discussion at page 677, and this is dealing with Section 1306, which is Chapter 13, but the language in 1306 that we're dealing with there is the same as the language we're dealing with here with immaterial changes. And the Court said Section 1306A expressly incorporates Section 541. Read together, Section 541 fixes property of the estate as of the date of filing, while Section 1306 adds to property of the state property interest which arise post-petition. So I think this Court has previously recognized in a very similar context that the use of the language in the statute that we're arguing over just means that there was some property added and that's all it means. And therefore, I don't believe the language is ambiguous at all and the Court can decide this case on the clear language of the statute. If the Court disagrees with that analysis and there's some analysis about ambiguity within the statute, I think Mr. Fitzpatrick has conceded that he can't overcome that hurdle because the Supreme Court has consistently had principles of statutory construction that you don't imply a change in existing law from a new statute. It has to be expressly stated. So is there an absolute priority rule in Chapter 13? There's not an absolute priority rule per se, but you have to commit enough payment to creditors that they would receive the same amount of money that they would get in a Chapter 7 liquidation case over five years. So to me, it's kind of a quasi-absolute priority rule even though it's never been called that. Right, but let's just say for the sake of argument there isn't one. Does it make sense to then have one in Chapter 11? What's the function of that? Because in Chapter 11 the debts are higher and that makes sense out of it? There's always been, except between the time frame of 1952 and 1978, there's always been an absolute priority rule that applies in Chapter 11 cases and nowhere else. So that's the norm is your point? That is the norm. And what's the explanation for the norm given that is it just the function of the fact that in Chapter 11 for individuals there's more debts and therefore you're going to be stricter when it comes to the junior creditors? Historically until the section was interpreted to say that individuals can file a Chapter 11 case, historically Chapter 11 was used for businesses and so it obviously made more sense in that context but when the courts interpreted Chapter 11 so that an individual debtor could take advantage of the provisions of Chapter 11 then they also had to go and meet the consequences of Chapter 11 which means you have to meet the absolute priority rule. Other than that I don't know any other way to answer your question. So you're not really saying there is coherence to that? I mean it doesn't mean you lose, you're just saying you don't think it's coherent. I'm not sure I understand that question. Well I mean they're both individuals, Chapter 13 and the individual Chapter 11, so they're both individuals. Correct. And I thought one of the points the appellant was making or at least some of the courts have made which is a way to look at this is to align them so that there's no absolute priority rule for individuals in either setting and the only question I had was well maybe if the way you get to Chapter 11 as opposed to Chapter 13 is you've got more debt, there could be a reason to be more protective of creditors in Chapter 11 as opposed to Chapter 13. I don't know, I'm just trying to make sense of it. Well I don't know if I can make total sense of it and there have been many commentators that have said that the amendments that were made in 2005 are not a model of legislative clarity, but I just think that the absolute priority rule is so embedded in the Chapter 11 jurisprudence that it's foreign to Chapter 13. You've got specific rules that apply to 13, creditors don't get to vote in a Chapter 13 case. What's the difference between Chapter 11 and Chapter 13 if you're an individual? Do you just know the amounts? Well in Chapter 13 you cannot have a plan that lasts more than five years. In Chapter 11 you can have a plan that lasts for many, many years. But I thought, okay, that's interesting, but I thought there was an amount of debt. Yes, there is an amount of debt. You have to be under the debt limits to go into Chapter 13 and there are no debt limitations in Chapter 11. What is that debt? What is the debt limitation? Oh, it changes every year, but it's somewhere around $300,000 or $400,000 unsecured for individuals and a larger amount for secured and this debtor was way over that amount. I guess the last point I would make before I turn this over to other counsel is Congress knows specifically how to deal with changes to the absolute priority rule. They did it in 1952 by eliminating the judicially created absolute priority rule. They reinstated it in 1978. So we've got a long history of congressional action on this point and I don't think you can infer or imply a change from the language that is being relied upon by the appellant in this case. Mr. Winchester. If the court please, Walt Winchester here on behalf of the appellant or the appellee, First Bank. Judge Sutton, if I may answer your questions, the limit on Chapter 13 under 11 U.S.C. 109 is $360,475 in unsecured debt and $1,081,400 in secured debt. Those are the thresholds that kick you into one or two. So what are your thoughts about why having this rule for one but not the other? Because in Chapter 11, the debtor is more in charge of his own fate. He's his own trustee. He doesn't have a wage order like you would have in a Chapter 13. He can go out seven or eight years. He has to file a disclosure statement, a much more lengthy plan explaining to his creditors much more than you do in a Chapter 13 of how I'm going to pay you and how I'm going to generate the funds to pay you. Those powers as a trustee are significant. He can set aside fraudulent conveyances. He can choose not to set those aside depending on whatever his fiduciary duties are under the code. He has the powers to set aside preferences. And in that, he can also operate his business without necessarily the control of a trustee. So with those additional requirements comes something else with that. If you're going to do that, you don't get to do that necessarily in a Chapter 13. You're going to have a trustee in place for the entirety of your plan. For that 36 to 60 months, she's going to take your money and pay your creditors. In a Chapter 11, more times than not, you do not have a trustee and you're controlling your own fate. You're also going to operate your business. So in return for that, this absolute priority rule has been in place except for that time frame between 1952 and 1978. If you're going to have those powers as a Chapter 11 debtor, then there's something else you're going to have to do to be able to retain that control and stay in bankruptcy. Why do you need an absolute priority rule for individuals? In other words, why wouldn't you just say the way to protect them is not in how the plan's approved. All you just say is these debts are never released. That's the point. You have to pay them at some point. We're not going to make you pay them this year. We're not going to make you pay them in five years. But effectively, you have such a rule by saying you're a limited individual. If you make more money, you're going to have to pay this off. If you don't have an absolute priority rule with the way that this section's been rewritten, then actually in a Chapter 11, you could probably pay less than you could in a 13 because you don't have that absolute priority rule, which means that if your prepetition assets, whatever that property is, if you don't have to pay your creditors in full, then all you've got to do under 1129A15, Part 2 of that, is pay your projected disposable income for at least five years. And you've satisfied that part of the test without that absolute priority rule. If the court rules that these statutory changes abrogate the absolute priority rule, it'll be the result, which is inconsistent with BAP-CEPA, the Bankruptcy Abuse Prevention Act, it'll actually reduce what a debtor has to pay in a Chapter 11. And I think the dissent in the Friedman case out of the Ninth Circuit illustrates that, of what's going to happen if you say the absolute priority rule doesn't apply in a Chapter 11 with these changes. Because in essence, you're telling that Chapter 11 debtor, you can keep your prepetition property and you don't have to pay any more than what you would get in a Chapter 7, plus whatever your projected disposable income is for five years. And if Congress wanted there to be just Chapter 13, it could have said individuals can't file Chapter 11 and gotten rid of these debt limits. Congress didn't do that, Your Honor. It left it in place and it left the absolute priority rule in place. With that said, unless the court has any other questions. Thank you. Mr. Fitzpatrick. Thank you. Respectfully, on the last point, I would disagree with Mr. Winchester. And to a certain extent, a comment made by Mr. Dickinson, there is no absolute priority rule in Chapter 13. The requirement to pay the value of assets that would be paid in liquidation in Chapter 7 is not an absolute priority rule. And that requirement was before 2005 and is still a requirement in Chapter 11. So, in order to keep an asset, regardless of the absolute priority rule, if it has value in the marketplace, above liens and exemptions, whatever, that value has to be paid to creditors in Chapter 13 or in Chapter 11 before we talk about the absolute priority rule. What the absolute priority rule does, it says even though you're going to pay that value, the fact you're going to keep that asset and pay its value violates the absolute priority rule. So, for an example, Mr. Lindsay is married. He has a tenancy by the entireties in Tennessee. He has extreme health issues. The likelihood of him surviving his spouse is nil unless she's run over by a truck. So the value of that in the marketplace is very small. But he has to pay that value, whatever it is. But the fact that he keeps it means he's violated the absolute priority rule and he has to pay 100% to his unsecured creditors. But, I guess on that point, I mean, as I understand it, he proposes to keep an extraordinary amount of pre-petition assets. Isn't that true? But he must pay the value of those assets in the marketplace to his creditors without any consideration of the absolute priority rule whatsoever. It's one of the requirements of the plan in 1122. It has nothing to do with the absolute priority rule. That value must be paid to have a confirmable plan. But tell me, I'm sure I'm missing something, but if he has to do that, why is it so objectionable that on top of that he has to do the absolute priority rule, which seems not to cover much? Your first point is so powerful from the protection of creditors. That's the telling liability of the current majority rule. In chapter 13, you get to keep your assets and pay their value plus a stream of income for a period of time under the means test. But in chapter 11, you pay the same amount, but if you keep the asset, unless you can meet the corollary to the absolute priority rule, the U.S. lumber corollary, you may not have a confirmable plan. So you pay the value, but unless you can find a resource, mom or dad, to invest new money, you can't keep anything even though you have paid its value. That's the problem with the majority rule. That's the problem with the absolute priority rule in the individual case. There's no shareholder with money Where are all the reports pre-2005 or even pre this split saying about how the sky is falling with respect to all these chapter 11s for individuals? Where is that? I mean, you're saying that in light of the split, this is the weakness in this one side of the split. And I'm asking you, since that rule predated 05, where are the policy papers in the legislative history that says, oh, we've got to get rid of this. This makes no sense economically. There is no legislative discussion. Okay, forget that. What happened in the marketplace is the income stream that the 2005 law changes demand this chapter 11 individual pay to creditors was not available to the creditors before. So if I'm a lawyer and I file bankruptcy and I get a case in that's worth a million dollars the day after bankruptcy, that one-third contingency is not available to my creditors unless I choose to make it available. And that's my quid pro quo. Just one last question because I'm not sure. You seem to know what you're talking about. I'm not totally following it. Are you making the point that in 05, the reason there's no such story of sky-falling experiences pre-05 is because the 05 law took it all away. To impose more. Okay, now I get it. It said, not only are we going to take away the income that you had post-petition before October of 2005, we're going to make you pay that money in for 60 months or the length of your plan, whichever is greater. It may not be 60 months. It was a pro-creditor bill. I mean, you've got to acknowledge that. Oh, certainly it was. But not all of it was pro-creditor. When we come back to Seifert, we're talking about taking away from creditors the payment on the retirement plan loan. Right? Well, that's beneficial to debtors. So it wasn't all for the creditors. So we have those situations. And my time is up. And I appreciate the consideration of the court. Thank you. Well, thanks to all of you. We will consider this, we will ponder this case very carefully. And if you have anything else you want us to think about in connection with the jurisdictional issue, we'd appreciate that you keep it to five pages and that we see it by next Tuesday.